**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANDREW LARSEN | * | |
| | * | |
| And | * | |
| | * | |
| DAISHA HENRY | * | |
| | * | |
| And | * | |
| | * | |
| ROXANNA ULLOA | * | |
| | * | |
| And | * | |
| | * | |
| SHAKIRA SMITH | * | |
| | * | |
| And | * | Case No.: 1:24-cv-388-CRC |
| | * | |
| MORGAN J. KAMINSKI | * | FIRST AMENDED CLASS |
| | * | AND COLLECTIVE ACTION |
| And | * | COMPLAINT |
| | * | |
| NICOLE MALLOY | * | JURY DEMAND REQUESTED |
| | * | |
| And | * | |
| | * | |
| ALEXIS BURKE | * | |
| | * | |
| And | * | |
| | * | |
| BRENNA SPENCE | * | |
| | * | |
| And | * | |
| | * | |
| EMILY RAINEY | * | |
| | * | |
| And | * | |
| | * | |
| JAMIE LIBERMAN | * | |
| | * | |
| *On Behalf of Themselves and All* | * | |
| *Other Similarly Situated Individuals* | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |

|  |  |
|---|---|
| v. | * |
|  | * |
| SLEDGE, INC. | * |
|  | * |
| And | * |
|  | * |
| IT'S MY PARTY, INC. | * |
|  | * |
| And | * |
|  | * |
| IT'S MY SMALL CLUB, LLC | * |
| 815 V Street NW | * |
| Washington, DC 20001 | * |
|  | * |
| SERVE:    Sam Hurwitz | * |
|           815 V Street NW | * |
|           Washington, DC 20001 | * |
|  | * |
| And | * |
|  | * |
| IT'S MY THEATRE, LLC | * |
| 815 V Street NW | * |
| Washington, DC 20001 | * |
|  | * |
| SERVE:    Clinton Edward Stack | * |
|           815 V Street NW | * |
|           Washington, DC 20001 | * |
|  | * |
| And | * |
|  | * |
| IT'S MY CORNER, LLC | * |
| 815 V Street NW | * |
| Washington, DC 20001 | * |
|  | * |
| SERVE:    Clinton Edward Stack | * |
|           815 V Street NW | * |
|           Washington, DC 20001 | * |
|  | * |
| And | * |
|  | * |
| DONNA WESTMORELAND | * |
| 7803 Tilbury Street | * |
| Bethesda, Maryland 20814 | * |
|  | * |
| And | * |
|  | * |

SETH HURWITZ                              *
6112 Lenox Road                           *
Bethesda, Maryland 20817                  *
                                          *
    DEFENDANTS.                           *
**************************************************************************

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Andrew Larsen ("Larsen"), Daisha Henry ("Henry"), Roxanna Ulloa ("Ulloa"), Shakira Smith ("Smith"), Morgan J. Kaminski ("Kaminski"), Nicole Malloy ("Malloy"), Alexis Burke ("Burke"), Brenna Spence ("Spence"), Emily Rainey ("Rainey"), and Jamie Liberman ("Liberman") (collectively, "Plaintiffs")), individually and on behalf of all other similarly situated individuals, by and through undersigned counsel and the law firm of Zipin, Amster & Greenberg, LLC, hereby files this First Amended Class and Collective Action Complaint against Defendants Sledge, Inc. ("Sledge"),  It's My Party, Inc. ("IMP"), It's My Small Club, LLC ("IMSC"), It's My Theatre, LLC ("IMT"), It's My Corner, LLC ("IMC"), Donna Westmoreland, Individually ("Westmoreland"), and Seth Hurwitz, Individually ("Hurwitz") (collectively, "Defendants") to recover earned and unpaid minimum wage compensation, deducted and assigned earned tips, statutory liquidated damages, interest, and attorney's fees and costs under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the District of Columbia Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001, *et seq.* ("DCMWA"), and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), as set forth below.

## PARTIES AND JURISDICTION

1.      Larsen is an adult resident of the District of Columbia.  By affixing his name as the Named Plaintiff in the initial Class and Collective Action Complaint filed in this matter on February 8, 2024 (Doc. 1), Larsen submitted his written consent to prosecute his claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

2.      Henry is an adult resident of the State of Maryland.  By filing her Opt-In Consent in this matter on March 11, 2024 (Doc. 9), Henry submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

3.      Ulloa is an adult resident of the State of Maryland.  By filing her Opt-In Consent in this matter on March 11, 2024 (Doc. 10), Ulloa submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

4.      Smith is an adult resident of the State of Maryland.  By filing her Opt-In Consent in this matter on March 11, 2024 (Doc. 11), Smith submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

5.      Kaminski is an adult resident of the District of Columbia.  By filing her Opt-In Consent in this matter on March 20, 2024 (Doc. 12), Kaminski submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCWA, and DCPWCL.

6.      Malloy is an adult resident of the District of Columbia.  By filing her Opt-In Consent in this matter on March 20, 2024 (Doc. 13), Malloy submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

7.      Burke is an adult resident of the District of Columbia.  By filing her Opt-In Consent in this matter on March 20, 2024 (Doc. 14), Burke submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

8.      Spence is an adult resident of the District of Columbia.  By filing her Opt-In Consent in this matter on April 2, 2024 (Doc. 15), Spence submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

9.      Rainey is an adult resident of the District of Columbia.  By filing her Opt-In Consent in this matter on April 2, 2024 (Doc. 16), Rainey submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCWMA, and DCWPCL.

10.     Liberman is an adult resident of the Commonwealth of Virginia.  By filing her Opt-In Consent in this matter on April 2, 2024 (Doc. 17), Liberman submitted her written consent to prosecute her claims against Defendants in this matter under the FLSA, DCMWA, and DCWPCL.

11.     Sledge is a corporation formed under the laws of the District of Columbia with a principal place of business in the District of Columbia.

12.     IMP is a corporation formed under the laws of the State of Maryland with a principal place of business in the District of Columbia.

13.     IMSC is a limited liability company formed under the laws of the District of Columbia with a principal place of business in the District of Columbia.

14.     IMT is a limited liability company formed under the laws of the District of Columbia with a principal place of business in the District of Columbia.

15.     IMC is a limited liability company formed under the laws of the District of Columbia with a principal place of business in the District of Columbia.

16.     Westmoreland is an adult resident of the State of Maryland.

17.     Hurwitz is an adult resident of the State of Maryland.

18.     During the period relevant to this action, February 8, 2021, through the date of judgment in this case ("the relevant period"), Sledge, IMP, IMSC, IMT, and IMC ("the Business Entities") operated and existed collectively and cooperatively, under the common administration, management, and control of Westmoreland and Hurwitz, as live music venues within the District of Columbia doing business as the 9:30 Club, the Atlantis, and the Lincoln Theatre ("the Venues").

19.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities were regularly physically present at or in each of the Venues for the common and cooperative purpose of controlling, administering, manager, and supervising each of the Venues.

20.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities held full authority and discretion to direct Plaintiffs and all other individuals to perform bartender and related bar-service duties within any of the Venues.

21.     During the relevant period, at the express direction of common, officers, managers, and supervisors on behalf of the Business entities, Plaintiffs and other individuals performed bartender and related bar-service duties within all or, at least, more than one of the Venues.

22.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities performed duties within each of the Venues including the direct management and supervision over Plaintiffs' and all other similarly situated employees while Plaintiffs and all other similarly situated individuals worked or performed bartender and related bar-service duties within each of the Venues.

23.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities held authority to hire, fire, discipline, and/or alter the terms and conditions of employment for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

24.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities acted as decision makers in setting, altering, and amending compensation and earned tip allocation plans for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

25.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities held authority and discretion to direct and control the administration and business operation of each of the Venues.

26.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities acted in the capacity of managers and supervisors over Plaintiffs and all other similarly situated individuals performed bartender and related bar-service duties within each of the Venues.

27.     During the relevant period, common owners, officers, managers, and supervisors on behalf of the Business Entities were responsible for keeping and maintaining employment, compensation, and related records arising from Plaintiffs and all other similarly situated individuals' employment performing bartender and related bar-service duties within each of the Venues.

28.     During the relevant period, Westmoreland was regularly physically present at or in each of the Venues, serving in the capacity as Chief Operating Officer and/or performing duties consistent with those of a high-level executive or controlling administrator, officer, and/or manager within each of the Venues.

29.     During the relevant period, Hurwitz was regularly physically present at or in each of the Venues, serving in the capacity as President and/or performing duties consistent with those of a high-level executive or controlling administrator, officer, and/or manager within each of the Venues.

30.     During the relevant period, Westmoreland held full authority and discretion to direct Plaintiffs and all other individuals to perform bartender and related bar-service duties within any of the Venues.

31.     During the relevant period, Hurwitz held full authority and discretion to direct Plaintiffs and all other individuals to perform bartender and related bar-service duties within any of the Venues.

32.     During the relevant period, Westmoreland directly supervised or managed Plaintiffs' and all other similarly situated individuals' bartender and related bar-service employment duties within each of the Venues.

33.     During the relevant period, Hurwitz directly supervised or managed Plaintiffs' and all other similarly situated individuals' bartender and related bar-service employment duties within each of the Venues.

34.     During the relevant period, Westmoreland held full authority to hire, fire, discipline, and/or alter the terms and conditions of employment for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

35.     During the relevant period, Hurwitz held full authority to hire, fire, discipline, and/or alter the terms and conditions of employment for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

36.     During the relevant period, Westmoreland participated substantially as a primary decision maker in setting, altering, and amending compensation and earned tip allocation plans for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

37.     During the relevant period, Hurwitz participated substantially as a primary decision maker in setting, altering, and amending compensation and earned tip allocation plans for Plaintiffs and all other similarly situated individuals performing bartender and related bar-service duties within each of the Venues.

38.     During the relevant period, Westmoreland held full authority and discretion to direct and control the administration and business operation of each of the Venues.

39.     During the relevant period, Hurwitz held full authority and discretion to direct and control the administration and business operations of each of the Venues.

40.     During the relevant period, Westmoreland served as one of Plaintiffs' and all other similarly situated individuals' most senior managers and supervisors while Plaintiffs and all other similarly situated individuals performed bartender and related bar-service duties within each of the Venues.

41.     During the relevant period, Hurwitz served as one of Plaintiffs' and all other similarly situated individuals' most senior managers and supervisors while Plaintiffs and all other similarly situated individuals performed bartender and related bar-service duties within each of the Venues.

42.     During the relevant period, Westmoreland was one of the primary individuals responsible for keeping and maintaining employment, compensation, and related records arising from Plaintiffs' and all other similarly situated individuals' employment performing bartender and related bar-service duties within each of the Venues.

43.     During the relevant period, Hurwitz was one of the primary individuals responsible for keeping and maintaining employment, compensation, and related records arising from Plaintiffs' and all other similarly situated individuals' employment performing bartender and related bar-service duties within each of the Venues.

44.     During the relevant period, Defendants jointly, cooperatively, collectively, or as a single or common enterprise and/or integrated enterprise employed Plaintiffs and all other similarly situated individuals to perform bartender and related bar-service duties within each of the Venues.

45.     During the relevant period, Defendants, in the aggregate and individually, realized annual gross revenue or volume of sales made or business done in an amount exceeding $500,000.00 and thus Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

46.     During the relevant period, while employed jointly, cooperatively, and collectively by Defendants, Plaintiffs and all other similarly situated individuals, while performing bartender and related bar-service duties within each of the Venues, handled, sold, and otherwise worked on goods and materials (namely food, drinks, cleaning supplies, and other related items) that were moved in or produced for commerce.

47.     During the relevant period, Defendants, jointly, cooperatively, and collectively, or as a single or common enterprise and/or integrated enterprise qualified as Plaintiffs and all other similarly situated individuals' "employers" for purposes of the FLSA, DCMWA, and DCWPCL.

48.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b).

49.     Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative fact as the FLSA claims.

50.     All alleged causes of action asserted herein can and should be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the Parties.

**FACTS CONCERNING PLAINTIFFS**

51.     During the relevant period, Defendants employed Plaintiffs to perform tipped bartender and related bar-service employment duties within each of the Venues.

52.     Time and compensation records relating to Plaintiffs' performance of work duties within each of the Venues during the relevant period are readily identifiable from information and records in Defendants' possession, custody, or control.

53.     During the relevant period, Defendants paid Plaintiffs for performance of bartender and related bar-service employment duties within each of the Venues at a direct regular hourly rate between roughly $5.35 and $10.00.

54.     During a portion of the relevant period, the direct regular hourly rate Defendants paid Plaintiffs for performance of bartender and related bar-service employment duties within each of the Venues fell below the mandatory Federal Minimum Wage.

55.     At all times during the relevant period, the direct regular hourly rate Defendants paid Plaintiffs for performance of bartender and related bar-service employment duties within each of the Venues fell below the mandatory District of Columbia Minimum Wage.

56.     In about October 2022, several of the Plaintiffs and other bar staff employed by Defendants to perform bartender and related bar service employment duties within Defendants' 9:30 Club's held a meeting and voted to enact a tip-splitting policy, pursuant to which, the total tip pool was to be split between bartenders and barbacks.

57.     Arising from this vote and Defendants' acceptance of the same, starting in about October 2022, bartenders employed by Defendants to perform duties within Defendants' 9:30 Club were promised and entitled to receive and retain 80% of the total tip pool each night and barbacks employed to perform duties within Defendants' 9:30 Club were entitled to receive and retain only 20% of the total tip pool each night.

58.     Contrary to the Parties agreement that Plaintiffs and other bartenders employed by Defendants to perform duties within Defendants' 9:30 Club were promised and entitled to receive and retain 80% of the total tip pool each night and barback employed within Defendants' 9:30 Club were entitled to receive and retain only 20% of the tip pool each night, Defendants, without notice to Plaintiffs and other employees, implemented, and carried out a tip-splitting policy contrary to the promised and agreed upon 80/20 split and instead, split tips evenly between Plaintiffs and all other bartenders and barbacks working within the 9:30 Club, calculated pursuant to the number of hours each employee worked.

59.     Notwithstanding the foregoing, each night, Plaintiffs and other bartenders and bar staff performing employment duties within Defendants' 9:30 Club filled out a tip sheet to record the tips they received to assist Defendants in splitting tips.  This sheet expressly stated that barbacks at Defendants' 9:30 Club were to receive only 20% of the total tip pool.

60.     Plaintiff, along with Defendants' other bar staff employees working within Defendants' 9:30 Club, did not become aware of Defendants' unlawful deviation from its tip-splitting policy until a 9:30 Club bar staff meeting occurring on or about December 11, 2023.

61.     At no time prior to the December 11, 2023, meeting did Defendants notify Plaintiffs or Defendants' other bar staff employees performing duties within Defendants' 9:30 Club of the change to its tip-splitting policy.

62.     During the period of October 2022, through December 11, 2023, each night Plaintiffs and other bartenders earned tips from working within Defendants' 9:30 Club, Defendants unlawfully and clandestinely deducted portions of Plaintiffs and the other bartenders earned tips, and contrary to the promised and agreed upon tip-splitting policy in place, unlawfully assigned Plaintiffs' and the other bartenders' earned tips to Defendants' barbacks working within Defendants' 9:30 Club, whom Defendants were already paying at a higher directly hourly rate as compared to Plaintiffs and the other bartenders.

63.     Throughout the entirety of the relevant period, Defendants failed to provide Plaintiffs and all individuals performing tipped bartender and bar-serving duties within each of the Venues with written notice of Defendants' tip-splitting policy in a form and/or with required language that fully complies with the mandatory FLSA and District of Columbia law "tip credit" notice requirement.

64.     Throughout the entirety of the relevant period, Defendants failed to provide Plaintiffs and all individuals performing tipped bartender and related bar-serving duties within each of the Venues with statutorily required notice that "tipped employees shall retain all tips received" or that "gratuities received by the employee have been retained by the employee" as required by D.C. Code § 32-1003(g).

65.     Throughout the entirety of the relevant period, Defendants failed to provide Plaintiffs and all individuals performing tipped bartender and related bar-serving duties within each of the Venues with statutorily required notice of their legal right and entitlement to receive direct hourly wages at least equal to the applicable minimum wage for all hours worked, as mandated by the FLSA and District of Columbia law.

66.     Throughout the entirety of the relevant period, Defendants failed to provide Plaintiffs and all individuals performing tipped bartender and related bar-servicing duties within each of the Venues with statutorily required "tip credit" notice at the time of hiring, as mandated under D.C. Code § 32-1008(c).

67.     Throughout the entirety of the relevant period, Defendants failed to provide Plaintiffs and all individuals performing tipped bartender and related bar-servicing duties within each of the Venues with statutorily required "tip credit" notice mandated under D.C. Code § 32-1008(b).

68.     Pursuant to D.C. Code § 32-1008(c), Defendants were required to provide a written notice to Plaintiffs and each of Defendants' employees performing tipped employment duties within each of the Venues, upon their hiring, and upon any changes to said written notice, of: (1) Defendants' full and correct business entity names, including their "doing business as" names; (2) the physical addresses of Defendants' main office or principal place of business, and a mailing address, if different; (3) Defendants' telephone numbers; (4) the employees' rates of pay and the basis of that rate; (5) Defendants' tip-sharing policy; and (6) the employees' regular payday.

69.     Defendants never provided Plaintiffs or any other tipped employee working within any of the Venues with the mandatory full, complete, and accurate "tip credit" notice at the start of their employment, as mandated by the FLSA and District of Columbia law.

70.     As a result of Defendants' failure to provide Plaintiffs and other tipped employees performing bar tender and related bar-serving duties within each of the Venues with the FLSA and District of Columbia statutorily required "tip credit" notice at any time during the relevant period, at no time during the relevant period did Defendants did not qualify for the use of the "tip credit" as a method of compliance with the FLSA or DCMWA Minimum Wage requirements.

71.     At all times during the relevant period, Defendants had actual knowledge of the FLSA and DCMWA Minimum Wage and "tip credit" requirements.

72.     At all times relevant period, Defendants' violations of the FLSA and DCMWA Minimum Wage "tip credit" requirements were willful and intentional or at least reckless and were never the product of Defendants' objective good faith attempt to comply with the same.

### FACTUAL ALLEGATIONS COMMON TO CLASS AND COLLECTIVE

73.     Individuals that are included within Plaintiffs' herein proposed Class and Collective include all individuals employed by Defendants to perform tipped employment duties within any of the Venues during the relevant period whom Defendants failed to pay direct hourly wages for all hours worked at an hourly rate at least equal to the applicable minimum wage ("the Putative Class").

74.     The identity of all members of the Putative Class and corresponding time and compensation records relating to members of the Putative Class's performance of work duties within each of the Venues is readily identifiable from information and records in Defendants' possession, custody, or control.

75.     During the relevant period, Defendants paid Plaintiffs and the members of the Putative Class at a direct hourly wage rates less than the full required Federal or District of Columbia Minimum Wage, as required by the FLSA and DCMWA.

76.     At no time during the relevant period did Defendants fully satisfy each of statutorily required condition precedent to pay Plaintiffs or any of the members of the Putative Class at an hourly rate less than the full required Federal or District of Columbia Minimum Wage.

77.     At no time during the relevant period did Defendants fully satisfy each of statutorily required condition precedent for Defendants to utilize the FLSA or DCMWA "tip credit" to offset Defendants' FLSA and DCMWA minimum wage compensation obligations to Plaintiffs or any member of the Putative Class.

78.     During the period of October 2022, through December 11, 2023, each night Defendants employed members of the Putative Class who worked as bartenders within Defendants' 9:30 Club, Defendants unlawfully and clandestinely deducted portions of the members of the Putative Class who worked as bartenders within Defendants' 9:30 Club's earned tips, and contrary to the promised and agreed upon tip-splitting policy in place, unlawfully assigned these tips to Defendants' barbacks working within Defendants' 9:30 Club, whom Defendants were already paying at a higher directly hourly rate as compared to members of the Putative Class  who were working as bartenders within Defendants' 9:30 Club.

79.     During the period of October 2022, through December 11, 2023, Defendants failed to allow members of the Putative Class who worked as bartenders within Defendants' 9:30 Club to receive or retain all the tips each earned and were entitled to retain each night and each pay period.

80.     During the relevant period, Defendants' violation the members of the Putative Class's wage payment rights under the FLSA, DCMWA, and DCWPCL were willful and intentional or at least reckless and were never the product of Defendants' good faith attempt to comply with the same.

## **COLLECTIVE ACTION ALLEGATIONS**

81.    Plaintiffs assert their claims as a collective action pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1308, on behalf of themselves and all other members of the Putative Class.

82.    During the relevant period, Defendants perpetrated common unlawful pay plans or schemes violative of the FLSA and District of Columbia law resulting in FLSA and District of Columbia wage payment violations commonly damaging Plaintiffs and the members of the Putative Class.

83.    Plaintiffs request they be permitted to serve as representatives of those members of the Putative Class who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1308.

## **DCMWA/DCWPCL CLASS ACTION ALLEGATIONS**

84.    Plaintiffs bring their claims in this action against Defendants for violations of the DCMWA and the DCWPCL as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and D.C. Code § 32-1308, on behalf of themselves and all members of the Putative Class for common class-wide relief to redress and remedy Defendants' common and class-wide violations of the DCMWA and DCWPCL as herein alleged.

85.    Plaintiffs proposed DCMWA and DCWPCL classes are so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class or in sub-classes will benefit the Parties and the Court.  While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, each proposed class or sub-class comprises at least thirty (30) individuals.

86.     There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class, and these common questions of law and fact predominate over any questions affecting members of the proposed class individually, in that Plaintiffs and all members of the Putative Class have been commonly harmed by Defendants' failure to provide statutorily required "tip credit" notice pursuant to D.C. Code § 32-1003 and D.C. Code § 32-1008.  Additionally, during the period of October 2022, through December 11, 2023, Defendants did not allow Plaintiffs and the members of the Putative Class who performed bartender duties within Defendants' 9:30 Club to keep and retain all earned tips received in violation of D.C. Code § 32-1003(g)(3).

87.     The common questions of law and fact include, but are not limited to, the following:

a.   Whether Defendants provided proper notice to Plaintiffs and the members of the Putative Class such that Defendants were entitled to utilize the District of Columbia "tip credit" to offset their District of Columbia minimum wage compensation obligations to Plaintiffs and the members of the Putative Class; and

b.   Whether, during the period of October 2022, through December 11, 2023, Defendants violated the District of Columbia wage payment requirements by deducting portions of Plaintiffs and other members of the Putative Class that worked as bartenders within Defendants' 9:30 Club's earned tips, and contrary to the promised and agreed tip-splitting policy in place, assigning these earned tips to Defendants' barbacks working within Defendants' 9:30 Club.

88.     Plaintiffs' DCMWA and DCWPCL claims asserted in this action are typical of the claims of the Putative Class, and the relief sought by Plaintiffs against Defendants in this action is typical of the relief which would be sought by members of the Putative Class against Defendants in separate actions.

89.     Plaintiffs and the members of the Putative Class were subject to the same unlawful compensation practices perpetrated by Defendants in violation of the DCMWA and DCWPCL, as alleged herein.

90.     Defendants' unlawful compensation policies and practices in violation of the DCMWA and DCWPCL similarly affected and damaged Plaintiffs and the members of Putative Class.

91.     Plaintiffs and the members of the Putative Class sustained similar losses, injuries, and damages arising from the same unlawful compensation policies and practices perpetrated by Defendants in violation of the DCMWA and DCWPCL.

92.     Plaintiffs can fairly and adequately protect the interests of all members of the Putative Class, and there are no known conflicts of interest between any Plaintiff and any member of the Putative Class.

93.     Plaintiffs have retained counsel experienced and competent in both wage and hour law and complex class action litigation.

94.     A Class Action is superior to other available means for the fair and efficient adjudication of the DCMWA and DCWPCL claims of Plaintiffs and the members of the Putative Class this controversy.

95.     Class Action treatment will permit Plaintiffs and a large number of Putative Class Members to prosecute their common DCMWA and DCWPCL claims against Defendants in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.

96.     Because the losses, injuries and damages suffered by Plaintiffs and the members of the Putative Class may be small for some in the sense pertinent to the Class Action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual members of the Putative Class to redress the wrongs done to them.

97.     Further, important public interests will be served by addressing the matter as a Class Action.  The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially greater than if Plaintiffs and the members of the Putative Class's DCMWA and DCWPCL claims are treated as a Class Action.

98.     Prosecution of separate actions by individual members of the Putative Class would create a risk of inconsistent and/or varying adjudications with respect to Plaintiffs and the individual members of the Putative Class, establishing incompatible standards of conduct for Defendants, and resulting in the impairment of their rights and the disposition of their interests through actions to which they are not parties.

99.     The issues in this action can be decided by means of common, class-wide proof.

### CAUSES OF ACTION

### COUNT I
### Violation of the Federal Fair Labor Standards Act
### (Minimum Wage)

100.     Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

101.    The FLSA mandates that an employer must pay employees a minimum wage in the amount of $7.25 per hour for all hours worked each week.

102.    The FLSA mandates that an employer must permit employees to keep and retain all earned tips.

103.    At all times during the relevant period, each Plaintiff and each member of the Putative Class was Defendants' "employee" covered by § 207(a)(1) of the FLSA, and Defendants were Plaintiffs and each member of the Putative Class's "employers" under § 207(a)(2) of the FLSA.

104.    Defendants, as Plaintiffs and each member of the Putative Class's employers, were obligated to compensate Plaintiffs and each member of the Putative Class at a direct hourly rate at least equal to the full Federal Minimum Wage for all hours worked.

105.    As set forth above, during the relevant period, Defendants failed to pay Plaintiffs and each member of the Putative Class for all hours worked at an hourly rate at least equal to the full Federal Minimum Wage for all hours worked.

106.    Defendants, as Plaintiffs and each member of the Putative Class's employers, were obligated to ensure that Plaintiffs and each member of the Putative Class kept and retained all earned tips.

107.    As set forth above, during the period of October 2022, through December 11, 2023, Defendants unlawfully deducted portions of Plaintiffs and other members of the Putative Class who worked as bartenders within Defendants' 9:30 Club's earned tips, and contrary to the promised and agreed upon tip-splitting policy in place, assigning these earned tips to Defendants' barbacks working within Defendants' 9:30 Club.

108.     Defendants' failure to pay Plaintiffs and all members of the Putative Class for all hours worked at an hourly rate at least equal to the full Federal Minimum Wage and failure to permit Plaintiffs and all Putative Class Members keep and retain all earned tips as required by the FLSA was willful and intentional and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs and each Putative Class Member under Count I, for earned and unpaid Federal Minimum Wage compensation in an amount to be proven at trial, all tips wrongfully deducted or withheld, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

### COUNT II
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Minimum Wage)

109.     Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

110.     The DCMWA mandates that an employer must pay employees performing work duties within the District of Columbia at an hourly rate at least equal to the full applicable District of Columbia minimum wage for all hours worked.

111.     The DCMWA mandates that an employer must permit employees performing work duties within the District of Columbia to keep and retain all earned tips.

112.     At all times during the relevant period, each Plaintiff and each member of the Putative Class was Defendants' "employee" and Defendants were Plaintiffs and each member of the Putative Class's "employers" under the DCMWA pursuant to D.C. Code §§ 32-1001, *et seq*.

113.    Defendants, as Plaintiffs' and each member of the Putative Class's employers, were obligated to compensate Plaintiffs and each member of the Putative Class at a direct hourly rate at least equal to the full District of Columbia Minimum Wage for all hours worked.

114.    As set forth above, during the relevant period, Defendants failed to pay Plaintiffs and each member of the Putative Class for all hours worked at an hourly rate at least equal to the full District of Columbia Minimum Wage for all hours worked.

115.    Defendants, as Plaintiffs and each member of the Putative Class's employers, were obligated to ensure that Plaintiffs and each member of the Putative Class kept and retained all earned tips.

116.    As set forth above, during the period of October 2022, through December 11, 2023, Defendants unlawfully deducted portions of Plaintiffs and other members of the Putative Class who worked as bartenders within Defendants' 9:30 Club's earned tips, and contrary to the promised and agreed upon tip-splitting policy in place, assigning these earned tips to Defendants' barbacks working within Defendants' 9:30 Club.

117.    Defendants' failure to pay Plaintiffs and all members of the Putative Class for all hours worked at an hourly rate at least equal to the full District of Columbia Minimum Wage and failure to permit Plaintiffs and all Putative Class Members keep and retain all earned tips as required by the DCMWA was willful and intentional and was not in good faith.

118.    To date, Defendants have not promptly paid Plaintiffs and each member of the Putative Class for all wages due and owing under the DCMWA.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs and each Putative Class Member under Count II, for earned and unpaid District of Columbia Minimum Wage compensation in an amount to be proven at trial, all tips wrongfully deducted or withheld, plus three times (3x) this amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

<u>**COUNT III**</u>
**Violation of the D.C. Wage Payment and Collection Law**
**(Unpaid Wages)**

119.    Plaintiffs reassert and re-allege each and every allegation set forth above as if each was set forth herein.

120.    Plaintiffs and each member of the Putative Class was Defendants' "employee" and Defendants were Plaintiff and each member of the Putative Class's "employer" within the meaning of the DCWPCL.

121.    Under the DCWPCL, Defendants were obligated to pay Plaintiffs and each member of the Putative Class all wages earned and owed for work that Plaintiffs and each member of the Putative Class performed within the District of Columbia.

122.    "Wages" pursuant to the DCWPCL (D.C. Code § 32-1301(3)), "includes a: (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) pursuant to District or Federal law."

123.     Plaintiffs and the members of the Putative Class performed work duties for Defendants' benefit within each of the Venues as set forth above for which Defendants failed to pay Plaintiffs and the members of the Putative Class all wages earned and required by Federal and District of Columbia law.

124.     In addition to failing to properly pay Plaintiffs and the members of the Putative Class full minimum wage compensation at mandatory rates required by Federal and District of Columbia law, during the period of October 2022, through December 11, 2023, Defendants unlawfully deducted portions of Plaintiffs and other members of the Putative Class who worked as bartenders within Defendants' 9:30 Club's earned tips, and contrary to the promised and agreed upon tip-splitting policy in place, assigning these tips to Defendants' barbacks working within Defendants' 9:30 Club.

125.     Defendants owe Plaintiffs and the members of the Putative Class wages for work duties performed within the District of Columbia as set forth above.

126.     Defendants' failure to pay Plaintiffs and the members of the Putative Class wages (including earned tips), as set forth above, constitutes a violation of Plaintiffs and the members of the Putative Class's right to receive wages as guaranteed by the DCWPCL.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiffs and each Putative Class Member under Count III, for earned and unpaid wages (including earned tips) in an amount to be determined a trial, plus three times (3x) this amount in liquidated damages, interest (both pre- and post-judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court or a jury deems appropriate.

## <u>RELIEF SOUGHT</u>

WHEREFORE, Plaintiffs and the members of the Putative Class collectively pray that this Honorable Court:

a. Issue an Order certifying this action as a collective action under the FLSA and D.C. Code § 32-1308, and designate Plaintiffs as representatives of all members of the Putative Class under the collective action.

b. Issue an Order certifying this action as a Class Action under the DCMWA and DCWPCL, and designate Plaintiffs as representatives on behalf all members of the Putative Class under the DCMWA and the DCWPCL;

c. Award Plaintiffs and all members of the Putative Class damages for all unpaid wages (including tips) found due to Plaintiffs and the members of the Putative Class, plus an award of statutory damages as provided by the FLSA, DCMWA, and DCWPCL;

d. Award Plaintiffs and the members of the Putative Class pre-and post-judgment interest at the statutory rate;

e. Award Plaintiffs and the members of the Putative Class attorney's fees, costs, and disbursements calculated at *Salazar* Index Rates; and

f. Award Plaintiffs and the members of the Putative Class all further legal or equitable relief as this Court or a jury deems necessary, just, or proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, by and through undersigned counsel, respectfully request a trial by jury on all facts and issues so triable.

Respectfully submitted,

ZIPIN, AMSTER & GREENBERG, LLC

_/s/ Michael K. Amster_
Michael K. Amster, Bar No. 1001110

_/s/ Gregg C. Greenberg_
Gregg C. Greenberg, Bar No. MD17291
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
Tel: (301) 587-9373
Fax: (240) 839-9142
mamster@zagfirm.com
ggreenberg@zagfirm.com

_/s/ Anthony G. Bizien_
Anthony G. Bizien, Bar No. MD0051
45 Essex Street, Suite 3 West
Hackensack, NJ 07601
Tel: (551) 244-1257
Fax (240) 839-9142
abizien@zagfirm.com

*Counsel for Plaintiffs and
the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 5th day of April 2024, a true and correct copy of the foregoing First Amended Class and Collective Action Complaint was electronically served upon all counsel of record via this Court's ECF system.

_/s/ Gregg C. Greenberg_
Gregg C. Greenberg